IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CR-277-FL
NO. 5:13-CV-29-FL

| | | |
|---|---|---|
| STEVEN NEAL GREENOE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

This matter comes before the court on petitioner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (DE 105), petitioner's motion for discovery (DE 120), and the government's motion to dismiss and response to petitioner's motions (DE 128, 129), to which petitioner has replied. Also pending are petitioner's motion for conference pursuant to Section 2 of the Classified Information Procedures Act, 18 U.S.C. App. III ("CIPA") (DE 138), and motion for clarification and immediate relief (DE 139). In this posture, the issues raised are ripe for ruling.

**BACKGROUND**

On March 2, 2011, petitioner pleaded guilty, pursuant to a written plea agreement, to engaging in international travel to deal in firearms without a license, under 18 U.S.C. § 924(n); and exporting firearms from the United States without a license, under 22 U.S.C. §§ 2778(b)(2) and 2278(c), which offenses were charged as counts 11 and 28 of a second superseding indictment filed February 2, 2011. As part of the plea agreement, the government agreed to dismiss all remaining counts out of fifty offenses charged in the second superseding indictment.

Petitioner was sentenced on January 10, 2012, before the Honorable Malcolm Howard, Senior United States District Judge, to a term of imprisonment of 120 months on each count to run concurrently for a total term of 120 months. Petitioner did not appeal. Petitioner filed the instant motion under § 2255, on January 11, 2013, asserting claims on the basis of ineffective assistance of counsel and prosecutorial misconduct. On March 19, 2013, this case was reassigned to the undersigned to conduct all proceedings. Petitioner, with leave of court, filed a memorandum in support of the § 2255 motion on May 10, 2013, along with a sealed motion for discovery.

On July 26, 2013, the government filed a motion to dismiss the § 2255 motion for failure to state a claim upon which relief can be granted, under Federal Rule of Civil Procedure 12(b)(6), and a response to the discovery motion. Petitioner filed an omnibus reply on August 2, 2013, and the court thereupon referred the pending motions to Magistrate Judge William A. Webb, for order and memorandum and recommendation on the motions.

The motions were re-referred on May 15, 2014, to Magistrate Judge Kimberly A. Swank. On June 23, 2014, Judge Swank scheduled an evidentiary hearing on the § 2255 motion for August 12, 2014. Petitioner filed on July 3, 2014, a motion asking the court to conduct a conference pursuant to CIPA Section 2 and to allow discovery in advance of the evidentiary hearing. Petitioner also filed a preliminary notice of intent to disclose classified information. That same date, in light of these developments, the court discontinued the pending evidentiary hearing and terminated the magistrate judge referral of the pending motions.

**DISCUSSION**

A.   Standard of Review

In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "An evidentiary hearing in open court is required when a movant presents a colorable . . . claim showing disputed facts beyond the record or when a credibility determination is necessary in order to resolve the issue." United States v. Ray, 547 F. App'x 343, 345 (4th Cir. 2013) (citing United States v. Witherspoon, 231 F.3d 923, 926-27 (4th Cir.2000)).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a pleading must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). In evaluating such a motion, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the [pleader]," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd.v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Nor must the court accept "unwarranted inferences, unreasonable conclusions, or arguments." Id. (quotations omitted).

B.   Analysis

The court begins with a determination of whether petitioner has stated a claim on the two grounds asserted and "whether the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). For the reasons stated below, petitioner has failed to state a claim for prosecutorial misconduct. Petitioner has, by contrast, stated

3

a claim for ineffective assistance of counsel, necessitating an evidentiary hearing and discovery to the extent discussed below.

   1.   Prosecutorial Misconduct

Petitioner's claim of prosecutorial misconduct is based on the allegation that the lead government agent in this case, Michael Fanelly, was on administrative suspension at the time of petitioner's sentencing because Fanelly was the target of a federal criminal investigation. Petitioner asserts that the criminal investigation of Fanelly impacted his case because it made Fanelly unavailable to provide at sentencing valuable information regarding petitioner's early cooperation, and because Fanelly's suspension interrupted the production of potentially exculpatory discovery held by officials in the United Kingdom.

In considering a claim of prosecutorial misconduct, the court must "determine whether the conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Scheetz, 293 F.3d 175, 185 (4th Cir.2002) (internal quotation marks and citation omitted). To prevail under this standard, a petitioner must show that a "'prosecutor's remarks or conduct were improper and, second . . . that such remarks or conduct prejudicially affected his substantial rights' so as to deprive him of a fair trial." United States v. Tann, 220 F. App'x 204, 206 (4th Cir. 2007) (quoting Scheetz, 293 F.3d at 185).

Petitioner's claim of prosecutorial misconduct is flawed in several respects. As an initial matter, petitioner could have raised his claim of prosecutorial misconduct on direct appeal of his conviction, but did not. The Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982). Consequently, "nonconstitutional claims that could have been raised on appeal, but were not, may

4

not be asserted in collateral proceedings." Stone v. Powell, 428 U.S. 465, 477 n. 10 (1976); see also United States v. Linder, 552 F.3d 391, 396–97 (4th Cir.2009) ("A petitioner is . . . precluded from raising claims that are the sort that *could have* been raised on appeal.") (emphasis in original, internal quotations omitted). Where the claim as petitioner asserts is based on the lack of availability of agent Fanelly and interrupted production of discovery, petitioner could have raised the claim on direct appeal.

In addition, the claim is without merit. Petitioner has not alleged any conduct by the prosecutor in this case that was "improper," much less conduct in this case that "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Scheetz, 293 F.3d at 185). Petitioner initially suggests there was some impropriety resulting from the fact that a federal grand jury returned a criminal indictment against Fanelly shortly after petitioner was sentenced. But, as petitioner notes, the alleged misconduct by Fanelly took place in another case, and petitioner does not allege that Fanelly committed any misconduct in the present case. In any event, charges against Fanelly ultimately were dismissed by the court. See 7:12-CR-31-F-1 (July 11, 2012, judgment of acquittal).

Petitioner suggests that the prosecution acted improperly by not making Fanelly available to testify at petitioner's sentencing and by allowing his absence to interrupt the production of potentially exculpatory discovery. But, this is not the type of prosecutorial conduct that the Fourth Circuit has found to have "so infected the trial with unfairness as to make [a] resulting conviction a denial of due process." Scheetz, 293 F.3d at 185. Indeed, the Fourth Circuit previously recognized that a "guilty plea conviction simply does not lend itself to a prosecutorial misconduct analysis." United States v. White, 367 F. App'x 486, 488 (4th Cir. 2010); cf. United States v.

5

Wilson, 135 F.3d 291, 297 (4th Cir.1998) (prosecutor's statements to jury not based on record evidence to secure a conviction at jury trial); United States v. Mitchell, 1 F.3d 235, 240 (4th Cir.1993) (same).

In addition, petitioner has not alleged prosecutorial conduct that "prejudicially affected his substantial rights" so as to deprive him of a fair trial. Scheetz, 293 F.3d at 185. After petitioner pleaded guilty on March 2, 2011, petitioner's counsel successfully moved to continue the sentencing proceeding on five separate occasions in order to review materials and obtain discovery. The government also moved to continue sentencing in order to permit testimony by an agent in the United Kingdom, and petitioner successfully obtained a court order for production of documents by a government agency.

Petitioner did not request additional time for further discovery, and in fact submitted voluminous materials in support of his objections and motion for variance at sentencing, including materials related to petitioner's alleged work in government service leading to the facts underlying the case, and information regarding his cooperation with investigating agents after his arrest in July 2010. (See DE 95, Sentencing Memorandum 3-12). In addition, the court awarded petitioner a full reduction for acceptance of responsibility, and it granted the defendant's objection to the government's proposed enhancement for obstruction of justice. (See DE 118, Sentencing Transcript 135). Accordingly, petitioner's claim of prejudice resulting from alleged prosecutorial conduct is belied by the record.

In sum, "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief" on his claim for prosecutorial misconduct. 28 U.S.C. § 2255(b). Therefore, this claim will be dismissed.

2.  Ineffective Assistance of Counsel

Petitioner contends that he received ineffective assistance of counsel during plea negotiations and through entry of his plea March 2, 2011, with respect to attorney Mark E. Edwards, petitioner's sole counsel of record until May 5, 2011. On that date, attorney Joseph E. Zeszotarski, Jr., entered his appearance and allegedly took the lead role during the remaining sentencing phase of petitioner's case. On that date, he also filed, on behalf of petitioner, a motion to extent time to submit objections to the draft presentence report and to continue the sentencing hearing. On the face of the motion, the new attorney informs that he "was engaged by Defendant's family to assist his current counsel (Mark Edwards, Esq.) with the sentencing phase of this case," where substantial objections are to be offered in a case "involv[ing] voluminous discovery, parts of which are relevant to the objections to be offered." (DE 62). The motion was allowed, as well as another one, that followed, referring to the attorney's attempts to obtain documents from foreign countries and interview witnesses. Petitioner asserts that his claims of ineffective assistance of counsel are exclusive to conduct of Edwards.

In particular, petitioner describes three main areas of representation in which Edwards was allegedly ineffective. First, petitioner contends that Edwards failed to advise petitioner properly on the availability of a "public authority defense" and to investigate properly the defense, in the following respects:

- Counsel failed to advise petitioner of the government's February 16, 2011, sealed motion to demand notice of a public authority defense (DE 48);

- Counsel failed to advise petitioner of the court's February 22, 2011, sealed order to disclose public authority defense (DE 52);

- Counsel failed to investigate petitioner's public authority defense despite being informed of its substance;

7

- Counsel failed to explain Fed. R. Crim. P. 12.3 and the concept of a public authority defense to petitioner;

  - Counsel failed to respond to the court's February 22, 2011, order to disclose petitioner's public authority defense, and failed to raise it at any point during petitioner's March 2, 2011 plea hearing; and

- Counsel informed petitioner after he had signed the plea agreement that government attorneys believed petitioner had a "public duty" defense.

(DE 131, Reply at 3).

Second, petitioner contends that Edwards failed to sufficiently investigate sentencing enhancements and negotiate terms of a plea agreement that would be favorable to petitioner, in the following respects:

- Counsel failed to investigate the possible sentencing enhancements prior to recommending that petitioner sign the plea agreement; and

- Counsel failed to negotiate a factual stipulate for the plea agreement.

(Id.).

Third, petitioner contends that Edwards provided ineffective assistance of counsel when Edwards sent petitioner a letter taunting and berating petitioner after petitioner signed the plea agreement. (Id.).

With respect to prejudice flowing from the first alleged category of deficient performance, petitioner asserts that had Edwards informed him of the public authority order, he would have insisted that Edwards file a notice of public authority defense. Petitioner also suggests that if counsel had further investigated and advised petitioner on the availability of a public authority defense, he would have refused to plead guilty on March 2, 2011. With respect to the remaining categories of alleged deficient performance by counsel, petitioner does not assert specifically any

8

prejudice, but he suggests or implies that he would not have pleaded guilty had counsel advised him sufficiently of the consequences of the plea and his options, or he would have received a better sentence had he proceeded with a more favorable plea.

A successful claim for ineffective assistance of counsel requires petitioner to show that "(1) his counsel's performance fell below an objective standard of reasonableness in light of the prevailing professional norms, and (2) 'there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Bell v. Evatt, 72 F.3d 421, 427 (4th Cir. 1995) (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)).

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 690. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. "With the benefit of hindsight, rarely can it be said that trial counsel made every possible objection and raised every conceivable viable legal argument. The law, however, requires not perfect but only professionally reasonable performance of counsel." Poyner v. Murray, 964 F.2d 1404, 1423 (4th Cir. 1992) (citing Strickland, 466 U.S. at 669). "[W]hen counsel's assumptions are reasonable given the totality of the circumstances and when counsel's strategy represents a reasonable choice based upon those assumptions, counsel need not investigate lines of defense that he has chosen not to employ at trial." Strickland, 466 U.S. at 681

In addition, a plea colloquy "affords the [government] substantial protection against later claims that the plea was the result of inadequate advice." Missouri v. Frye, 132 S. Ct. 1399, 1406 (2012). "[I]n the absence of extraordinary circumstances, allegations in a § 2255 motion that directly

9

contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005) (internal quotations omitted). "In the absence of clear and convincing evidence to the contrary, [petitioner] must be bound by what he said at the time of his plea." Little v. Allsbrook, 731 F.2d 238, 240 (4th Cir. 1984).

"[I]n order to satisfy the 'prejudice' requirement [in the guilty plea context], the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). "Moreover, to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010). "[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." Hill, 474 U.S. at 59. "This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." Id. "Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Id.

In this case, petitioner's ineffective assistance of counsel claim raises factual issues that cannot be resolved without an evidentiary hearing. For example, under the circumstances of this case, a "determination that counsel's advice . . . was a strategic one is a factual determination

10

requiring a credibility determination, or at least the receipt of evidence outside of the present record." United States v. Dickerson, 546 F. App'x 211, 214 (4th Cir. 2013). Additional unresolved factual issues that may be determinative of petitioner's ineffective assistance of counsel claim, particularly the reasonable performance prong of the claim, may include the following:

- What allegations or information was attorney Edwards aware of during the course of his representation of petitioner related to a public authority defense?

- What did petitioner communicate to Edwards during the course of the criminal case regarding his reasons for transporting firearms to the United Kingdom?

- Were the allegations or information provided to attorney Edwards during the course of the criminal case credible, in light of the facts and circumstances presented to Edwards at the time of the representation?

- What, if any, considerations of strategy did Edwards weigh in deciding what advice to give petitioner on whether to enter into a guilty plea or proceed to trial?

- What plea options did the government suggest or communicate to Edwards?

- What did counsel state to petitioner regarding the potential sentence or other consequences of a guilty plea?

In addition, although petitioner asserts that his claim is exclusive to Edwards, communications or other information known to Zeszotarski may also be relevant to a determination of whether petitioner received ineffective assistance of counsel. For example, if petitioner communicated similar information to both Edwards and Zeszotarski, and if Zeszotarski did not discuss withdrawal of plea with petitioner, this may have bearing on the reasonableness of Edwards' advice to petitioner. If Zeszotarski had determined that Edwards' performance as counsel was so deficient as to render the guilty plea not knowing or voluntary, then Zeszotarski could have raised this issue with his client and discussed the possibility of withdrawing his plea. Cf. United States v.

11

Bowman, 348 F.3d 408, 416 (4th Cir. 2003) (reviewing on direct appeal district court's denial of motion to withdraw plea where, among other allegations, counsel at time of plea was alleged to have rendered ineffective advice). An evidentiary hearing may shed light on whether Zeszotarski had reason to doubt the performance of Edwards or had other strategic reasons for advising petitioner to proceed as he did.

The court's resolution of these factual issues, and other factual issues related to whether Edwards provided reasonable representation, may be determinative of petitioner's ineffective assistance of counsel claim, without need for the court to address the prejudice prong of petitioner's ineffective assistance of counsel claim. See Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in [a particular] order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Because of the nature of the inquiry into the first prong of the Strickland test for ineffective assistance of counsel, the court rejects petitioner's argument that he must be permitted to conduct discovery at this time into classified information that could potentially have formed the basis of a public authority defense. Similarly, the court rejects petitioner's suggestion that it is necessary to disclose classified information in a CIPA section 2 proceeding in advance of the evidentiary hearing.

Instead, the present inquiry that the court will address at evidentiary hearing, which may be determinative of the claim, is whether in light of the circumstances known to counsel at the time, counsel provided reasonable representation to petitioner. See Strickland, 466 U.S. at 690 (stating that the court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct"). The Supreme Court has outlined the

12

type of information and communications that will be pertinent to a determination of the reasonableness of counsel's actions, which provides a reference point for the subject matter of an evidentiary hearing in this case:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. **And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.** In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

Strickland, 466 U.S. at 691 (emphasis added).

With respect to information known to counsel at the time of the underlying criminal case, the record already reflects a number of references to information that could have related to a public authority defense. For example, petitioner's sentencing memorandum detailed petitioner's alleged work for U.S. Government intelligence; private sector work with U.S. intelligence contacts; discussions with U.S. government intelligence personnel about a project called "Liberty Hobbs" to provide anti-piracy security, and non-disclosure agreements regarding the same. (See DE 95, Sentencing Memorandum at 4-7). The record also reflects that, at the time of the underlying criminal case, government intelligence agencies were not able to confirm or deny the existence or nonexistence of classified information related to petitioner, and this comprised the full extent of classified information that counsel Edwards and Zeszotarski represented they were able to confirm at the time of the underlying criminal case. (Id. at 7-11). Accordingly, for purposes of the present

13

inquiry, which turns on what counsel knew at the time of the underlying criminal case, it is irrelevant whether presently retained counsel on collateral review believe they can obtain further classified information, or confirmation of the classified nature of existing information, beyond what was available at the time of the underlying criminal case.

The court is mindful that at a future stage this case classified discovery and materials could be relevant, if the court determines that inquiry into the prejudice prong of the ineffective assistance of counsel claim is warranted. See Hill, 474 U.S. at 59 (noting that the "determination whether the error 'prejudiced' the defendant . . . will depend on the likelihood that discovery of [additional] evidence would have led counsel to change his recommendation as to the plea"). At present, however, the court need not proceed to this inquiry if, after evidentiary hearing, the court makes findings of fact and conclusions of law that foreclose relief based on the reasonable performance prong of the ineffective assistance of counsel claim.

In summary, the court will set the matter for evidentiary hearing on the issue of whether attorney Edwards provided reasonable professional assistance to petitioner in the underlying criminal case. Because of the present focus of the evidentiary hearing, the court will deny without prejudice petitioner's motion for discovery, except to the extent petitioner seeks discovery related to or leading to the following categories of information:

> 1. Communications between petitioner and counsel (both Edwards and/or Zeszotarski) during the course of the underlying criminal case.
>
> 2. Information developed or obtained during the course of any investigation undertaken by Edwards and/or Zeszotarski during the course of the underlying criminal case.
>
> 3. Communications between the prosecution and petitioner and his counsel (both Edwards and/or Zeszotarski) during the course of the underlying criminal case.

14

     4. Communications between Edwards and Zeszotarski during the course of the underlying criminal case.

Because of the nature of the ineffective assistance of counsel inquiry at this time, petitioner's presence is required at the evidentiary hearing. See Raines v. United States, 423 F.2d 526, 530 (4th Cir. 1970). The court will direct the parties to meet and confer and develop a proposed consent schedule for completion of discovery and to provide a time period after which the parties, including petitioner, will be available for an evidentiary hearing.

## CONCLUSION

  Based on the foregoing, the government's motion to dismiss (DE 129) is GRANTED IN PART and DENIED IN PART. As set forth herein, petitioner's prosecutorial misconduct claim is DIMISSED and petitioner's ineffective assistance of counsel claim is ALLOWED TO PROCEED. Petitioner's motion for discovery (DE 120) is DENIED WITHOUT PREJUDICE, except to the extent set forth herein. Petitioner's motion for CIPA Section 2 conference (DE 138) is DENIED WITHOUT PREJUDICE, and petitioner's motion for clarification and immediate relief (DE 139) is DENIED AS MOOT. For good cause shown, the motions to seal (DE 140, 143) are GRANTED.

  The court will set this matter for evidentiary hearing to be scheduled in accordance with the following. The court DIRECTS the parties to meet and confer and file within twenty-one (21) days of the date of this order a proposed consent schedule for completion of discovery and to specify a time period therein after which the parties, including petitioner, will be available for an evidentiary hearing according to the parameters set forth herein. The court further DIRECTS the clerk to coordinate with the U.S. Marshals in advance of this court's scheduling of the hearing to ensure petitioner's presence at the hearing.

SO ORDERED, this the 14th day of July, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge

16